SAMUEL P. P. FAY, Judge of Probate, *vs.* ELIZABETH MUZZEY & others.

Manure taken from the barnyard of a homestead, and piled upon the land, though not broken up nor rotten, nor in a fit state for incorporation with the soil, is part of the realty, and does not go to the administrator of the owner.

An administrator must be charged with the value of manure which is personal property although he has spread it in the usual course of good husbandry upon the land of the deceased, and has sold the land for the payment of debts.

An administrator must account for chattels included in his inventory to an administrator *de bonis non*, although they are also included in the inventory of the latter.

ACTION OF CONTRACT upon the probate bond of Elizabeth Muzzey as administrator of the estate of her husband, Benjamin Muzzey, brought for the use of Moses G. Cobb, administrator *de bonis non* of said Benjamin. Trial in this court in Middlesex at October term 1852, before *Cushing*, J., who reported the following case for the judgment of the full court:

" The case, after default of the defendants, was referred to an auditor, who reported that he found due to the plaintiff from the defendants the sum of $4,872.68; and also the further sum of $47.58 for manure, unless upon the following facts the court should determine otherwise as matter of law: It was proved that a large pile of manure, containing some eight or ten cords, not broken up nor rotten, and not in a fit condition for incor-

5 *

poration with the soil, stood on the land of the said Benjamin at the time of his decease, and so continued until after the appraisal returned by said Elizabeth into the probate court; and this manure was taken from the barnyard of the homestead of said deceased.

" Also the further sum of $31.72, unless upon the following facts the court should determine otherwise as matter of law : It was proved that certain other manure, duly set down in said Elizabeth's inventory, and without controversy the personal property of said Benjamin at the time of his decease, was, after the date of her said appraisal, by her authority spread upon the lands which descended from her intestate ; that this was done judiciously, in an agricultural view, and in the usual course of good husbandry. This manure was taken from the hotel stable standing on the land of said deceased. All the real estate of the deceased was afterwards sold for the payment of debts.

" Also the further sum of $440.49, unless upon the following facts the court should determine otherwise as matter of law : Certain chattels, duly set down in said Elizabeth's inventory, are also set down in the inventory returned by said Cobb as administrator *de bonis non;* and in her second account the said Elizabeth alleges that fact in discharge of her liability for the value of said chattels. Said Cobb never received the property as appraised."

This case was argued in writing.

*M. G. Cobb,* for the plaintiff. 1. Manure in a heap, before it is spread upon the land, is personal property, and goes to the executor or administrator. 1 Williams on Executors (11th Amer. ed.) 615. The fact that the first parcel had been taken from the barnyard of the deceased's homestead cannot affect this question ; although, if it had been in the barnyard at the time of the intestate's death, it might be otherwise. *Kittredge* v. *Woods,* 3 N. H. 503.

2. The other parcel of manure is admitted to have been personal property at the time of his decease ; and there is no law authorizing the administratrix to spread it upon the land, and thus escape accounting for it.

3. The administratrix must account for the chattels set down in her inventory, and never received by the administrator *de bonis non.* The entry of them in his inventory is *prima facie* evidence, but not conclusive against him.　*Stearn* v. *Mills,* 4 B. & Ad. 657.　*Craig* v. *McGehee,* 16 Alab. 41.　*Boggan* v. *Walter,* 12 Sm. & Marsh. 666.　Rev. Sts. *c.* 67, § 5.

*J. P. Converse,* for the defendants.　1. The administratrix should not be charged with the manure taken from the barnyard of the homestead of the deceased, inasmuch as that was real estate and belonged to the homestead.　*Daniels* v. *Pond,* 21 Pick. 367.　*Lassell* v. *Reed,* 6 Greenl. 222.　*Kittredge* v. *Woods,* 3 N. H. 503.

2. The other manure having been expended upon the real estate in the usual course of good husbandry, and the real estate having been sold for the payment of the intestate's debts, his creditors have once had the benefit of the manure, and cannot recover its full value again.

3. Upon the appointment of the administrator *de bonis non,* all the chattels of the intestate vested in him, and the former administratrix cannot be charged with them, unless she had disposed of them or converted them to her own use, or improperly withheld them from her successor — neither of which appears.

HOAR, J.　1. The court are of opinion that manure from the barnyard of the homestead of the intestate, standing in a pile upon his land, although "not broken up nor rotten, and not in a fit condition for incorporation with the soil," is not therefore assets in the hands of his administratrix, and that she is not chargeable therewith as a part of his personal estate.　Manure, made in the course of husbandry upon a farm, is so attached to and connected with the realty, that, in the absence of any express stipulation to the contrary, it passes as appurtenant to it.　This has been so decided as between landlord and tenant, in the cases of *Daniels* v. *Pond,* 21 Pick. 367; *Lassell* v. *Reed,* 6 Greenl. 222; and *Middlebrook* v. *Corwin,* 15 Wend. 169.　The reason of the rule is, that it is for the benefit of agriculture, that manure, which is usually produced from the droppings of cattle or swine fed upon the products of the farm, and composted with earth or

vegetable matter taken from the soil, and the frequent applica·tion of which to the ground is so essential to its successful cultivation, should be retained for use upon the land.　Such is unquestionably the general usage and understanding, and a different rule would give rise to many difficult and embarrassing questions.

The same doctrine was applied, as between vendor and vendee, in *Kittredge* v. *Woods*, 3 N. H. 503, and in *Goodrich* v. *Jones*, 2 Hill (N. Y.) 142.　The doctrine as to fixtures and incidents to the realty is always most strictly held, as between heir and executor, in favor of the heir, and against the right to disannex from the inheritance whatever has been affixed thereto.　*Elwes* v. *Maw*, 3 East, 51.

The circumstance that a thing is not permanently affixed to the freehold, but is capable of detachment, and is even temporarily detached from it, is not conclusive against the right of the owner of the land.　Thus keys of doors go to the heir, and not to the executor ; Wentworth on Executors, 62 ; and in *Goodrich* v. *Jones, ubi supra,* it was held, that fencing materials, which have been used as a part of the fence, accidentally or temporarily detached from it, without any intent of the owner to divest them permanently from that use, do not cease to be a part of the freehold.　In *Bishop* v. *Bishop,* 1 Kernan, 123, the same principle was applied to the case of hop poles, which had been taken up and laid in heaps for preservation through the winter ; and it was held, that they would pass by a conveyance of the land.

2. The manure from the hotel stable, which is agreed to have been personal estate, and was included in the inventory, must be accounted for by the administratrix ; and it is no sufficient account to say that she has expended it upon the real estate which has since been sold for the payment of debts.　There is no way in which it can be made certain that it has increased the amount received from the sale of the real estate ; and if this were established, an administrator has no right thus to expend the personal property of her intestate.

3. The chattels which were returned by the administratrix in her inventory must be accounted for by her.　If it should ap·

pear that they had been delivered by her to her successor, the administrator *de bonis non*, that would discharge her from her liability. The fact that the chattels were in existence, and had not been sold by the administratrix, would make it proper for him to include them in his inventory. They belong to the estate, and remain to be administered, and the administrator *de bonis non* is entitled to receive them, or to maintain a suit for their value against the administratrix. Having made a demand for them, and not having actually received them into possession, it would have perhaps been more correct to insert in his inventory the claim for their value, rather than the chattels themselves. Perhaps, when he returned the inventory, he expected to receive them. The fact that he included them in his inventory in this form might be evidence that they had actually been delivered, if that question were in controversy. But the fact being otherwise, there is no estoppel against showing it; and the chattels being a part of the estate which the administratrix has received, and not applied in any manner according to her official duty, she is to be charged with their value in this action.

The last two items in the auditor's report are therefore to be added to the first sum found by him to be due from the defendants to the plaintiff, and judgment being rendered for the penalty of the bond, execution is to issue for those amounts, with interest from the date of the auditor's report.